IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLE L. DASHNEY,      CV 06-6134-MA

        Plaintiff,      OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,

        Defendant.

   Kathryn Tassinari
   Mark Manning
   474 Willamette, Suit 200
   Eugene, OR  97401
   541.686.1969

        Attorneys for Plaintiff

   KARIN J. IMMERGUT
   United States Attorney
   NEIL J. EVANS
   Assistant United States Attorney
   1000 S.W. Third Avenue, Suite 600
   Portland, OR  97204-2902

   JOHANNA VANDERLEE
   Special Assistant United States Attorney
   Social Security Administration
   701 5th Avenue, Suite 2900 M/S 901
   Seattle, WA  98104-7075

        Attorneys for Defendant

MARSH, Judge:

1- OPINION AND ORDER

## INTRODUCTION

Plaintiff, Nichole L. Dashney (Dashney), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) child's disability benefits under Title XVI of the Social Security Act, and finding her ineligible for SSI adult benefits. See 42 U.S.C. §§ 1381-1383f. This court has jurisdiction under 42 U.S.C. § 405(g).

Dashney's mother applied for benefits on her behalf on July 15, 2003, when Dashney was a minor. She alleged Dashney became disabled on June 4, 1998, when she was 11 years old, due to attention deficit disorder (ADD), scoliosis, social phobia and depression. The onset date of disability was amended to July 1, 2003.

On August 15, 2005, an Administrative Law Judge (ALJ) conducted a hearing. At that time, Dashney was 18 years old, entering the 12th grade, and working part-time as a housekeeper. On December 21, 2005, the ALJ issued a decision finding Dashney not disabled. On April 12, 2006, the Appeals Council denied Dashney's request for review, making the ALJ's decision the Commissioner's final decision. See 20 C.F.R. § 422.210(2005).

On appeal to this court, Dashney alleges the ALJ erred by finding she did not meet or equal the Listed Impairment for

2- OPINION AND ORDER

mental retardation, considered so severe as to automatically constitute disability.  See 20 C.F.R. § 416.924.

For the reasons that follow the Commissioner's decision is affirmed and this case is dismissed.

### STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v.

3- OPINION AND ORDER

Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

### I.  Child Disability

An individual under the age of 18 is eligible for Childhood SSI payments based on disability if she suffers from "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(3). The Commissioner uses a three-step sequential evaluation process to determine whether a claimant is eligible for Childhood SSI. 20 C.F.R. § 416.924.

Step one requires the Commissioner to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If so, there can be no finding of disability. If not, the analysis proceeds to step two.

Here, at step one, the ALJ found that Dashney had never engaged in substantial gainful activity at any time since her alleged onset of disability.

Step two requires the Commissioner to decide whether the claimant has a severe impairment. An impairment is severe if it is more than a "slight abnormality or a combination of slight abnormalities" and causes more than "minimal functional limitations." 20 C.F.R. § 416.924(c). If the child does not have a severe impairment, there can be no finding of disability. If the ALJ determined that the child does have a severe impairment, the analysis proceeds to step three.

Here, at step two, the ALJ found plaintiff suffers from severe impairments, including attention deficit disorder hyperactivity disorder (ADHD), depression v. dysthymia, and a borderline I.Q.

Step three requires the Commissioner to determine whether the severe impairment(s) "meet(s) or medically equal(s) in severity the set of criteria for an impairment in the listings, or...functionally equal(s) the listings." 20 C.F.R. § 416.924(d); see also Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000). A Listed Impairment (also referred to as a "listing") is an impairment considered so severe as to automatically constitute disability, without regard to any

5- OPINION AND ORDER

further consideration of a claimant's age, education, and/or work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

A child's functional limitations will be evaluated in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(I)-(vi).  A medically determinable impairment or combination of impairments will functionally equal a listed impairment if it results in "marked" limitations in two of these domains, or if it results in an "extreme" limitation in one of these domains.  20 C.F.R. § 416.926a(e)(2).  A "marked" limitation is a limitation that seriously interferes with the ability to independently initiate, sustain, or complete activities.  Id.  An "extreme" limitation is a limitation that seriously interferes with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3)(I).  If this equivalency test is met and the statutory duration requirement is satisfied, the child will be found disabled.  20 C.F.R. § 416.924(d)(1).

Here, at step three, the ALJ determined that Dashney's impairments did not meet, equal, or functionally equal a listed impairment.  The ALJ found Dashney did not have a solid diagnosis

6- OPINION AND ORDER

of "mental retardation" sufficient to meet the listing criteria. Further, the ALJ concluded that none of Dashney's impairments caused "severe" or "marked" limitations in any of the functional domains.  Thus, they did not equal or functionally equal the listings.  According, the ALJ found Dashney was not disabled under the child disability analysis.

**II.  Adult Disability**

The period under review following Dashney's 18th birthday (April 11, 2005) was evaluated under the adult disability standards.  See 20 C.F.R. § 416.924(e).

The Commissioner has established a five-step sequential process for determining whether an adult is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  See also 20 C.F.R. § 416.920. The claimant bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here at Step One, the ALJ found Dashney had not performed substantial gainful work activity since her alleged onset date of disability.  20 C.F.R. § 416.920(a)(4)(I).

At Step Two, the ALJ found Dashney had "severe" impairments, including attention deficit hyperactivity disorder (ADHD), depression v. dysthymia, and a borderline I.Q.  20 C.F.R. § 416.920(a)(4)(ii).

7- OPINION AND ORDER

At Step Three, the ALJ determined none of Dashney's impairments, separately or in combination, met or equaled a Listed Impairment. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

The ALJ determined that Dashney had the residual functional capacity (RFC) to perform simple, repetitive tasks, involving only incidental contact with coworkers and the public, with limited workplace changes, no work or goal planning, no rapid paced production quotas, no constant interpersonal contact or working as part of a team, and a moderate limitations in harsh supervisory criticism. 20 C.F.R. §§ 416.920(e), 416.945.

At Step Four, the ALJ found Dashney had no past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).

At Step Five, the ALJ found Dashney remained capable of performing other work, such as nut sorter, stuffed animal stuffer, and bakery line worker. 20 C.F.R. §§ 416.920(g). Therefore, the ALJ found that Dashney was not disabled under the adult disability analysis.

### DISCUSSION

Dashney alleges the ALJ erred by finding she did not meet or equal Listed Impairment 12.05, the adult listing for mental retardation. See 20 C.F.R. § 416.924. Dashney does not argue, however, that the ALJ erred in concluding that she does not meet

8- OPINION AND ORDER

or equal the criteria for Listed Impairment 112.05, the child listing for mental retardation. Accordingly, I need not review the ALJ's finding that Dashney failed to prove she was disabled prior to attaining the age of 18. It is also noteworthy that Dashney does not allege the ALJ provided legally insufficient reasons for rejecting testimonial or medical evidence.

The assessment of whether a claimant's impairments either meet or equal a listed impairment must be based on medical evidence. See 20 C.F.R. §§ 404.1520(d), 416.1520(d). A social security claimant bears the burden of proving her impairment(s) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

In the case at bar, the ALJ considered whether Dashney's impairments met the criteria of the adult listings for mental retardation (12.05) and depression (12.04). Since Dashney does not claim the ALJ erred in finding she did not qualify under the listing for depression, the following discussion focuses on the listing for mental retardation.

The diagnostic description for Listed Impairment 12.05 is "mental retardation," or "significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," or before age 22.

9- OPINION AND ORDER

The required level of severity for this listing is met when one of the following criteria is satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living;
>> 2. Marked difficulties in social functioning;
>> 3. Marked difficulties in maintaining concentration, persistence, or pace;
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05. In addition, the background section of the mental impairment Listings, requires IQ testing to be accompanied by a narrative report that comments "on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." See 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(A)(6)(a).

10- OPINION AND ORDER

According to Dashney, she meets the "C" criteria, because she has a full scale IQ of 68, and "other mental impairments" of dysthymic disorder and attention deficit hyperactivity disorder, which she claims cause significant work-related limitations.

The Commissioner, on the other hand, argues that the ALJ correctly concluded that this IQ score was not reliable because it was inconsistent with Dashney's daily activities and behavior, and not supported by medical evidence. Further, the Commissioner argues that although Dashney has other mental impairments in addition to low intellectual functioning, they do not impose "an additional and significant work-related limitation or function" as required under the "C" criteria. Upon a thorough review of the evidence in this case, I concur with the Commissioner.

The phychologist who administered the IQ test, William McConochie, Ph.D., evaluated Dashney one time, on September 10, 2003, and did not render treatment. He described her as very shy, but able to get along well at home, school, and in the community. Dashney told Dr. McConochie she took public transit, groomed herself, attended school, movies, used the telephone, cooked, shopped, went to restaurants, visited friends, and did household chores. However, Dashney reported feeling "weird" because she did not have many friends. During her mental status exam she exhibited clear speech, good grooming and was fully

11- OPINION AND ORDER

oriented. She remembered unrelated words for several minutes, read, wrote, counted backwards by twos, and had good attention and concentration throughout the evaluation.

Dr. McConochie, did not render a firm diagnosis of mental retardation; instead he diagnosed developmental/ personality disorder, and "rule out" mild mental retardation. He further opined that Dashney "does not appear to have social phobia or agoraphobia" and that he did "not see overt symptoms of ADD or ADHD." Regarding her ability to work, Dr. McConochie stated that Dashney "might be able to hold down a hotel/motel housekeeping job or similar job as an adult" and that her depression would improve if she found "sheltered workshop activity or employment" and built friendships.

State agency reviewing psycholgists, Paul Rethinger, Ph.D., and Frank Lahman, Ph.D., reviewed Dashney's counseling records, which Dr. McConochie did not have the benefit of doing, in addition to Dr. McConochie's evaluation. Dashney's counseling records showed she was very concerned about peer acceptance and had a hard time making friends due to low self-esteem. She attended a string of alternative high schools, and often opted not to go to school due to social phobia. However, over the course of therapy Dashney made "significant gains," according to her therapist, Peter Schnabel, and began attending school

12- OPINION AND ORDER

regularly, took a ballet class for a time, worked 20 hours per week as a housekeeper at the University of Oregon, and engaged socially to the "extent needed to carry out routine activities." Accordingly, Drs. Rethinger and Lahman concluded that Dashney's alleged impairments caused some functional limitations, but not to the degree required under Listed Impairment 12.05.

Finally, Susan Dragovich, Ph.D., the medical expert who testified at the hearing, also reviewed Dashney's entire medical record, and observed Dashney's testimony and demeanor at the hearing. Dr. Dragovich testified that Dashney had ADHD, which was stable on medication, dysthymia or depression, and borderline intellectual functioning. Dr. Dragovich concluded that Dashney's adaptive functioning was not limited enough to warrant a diagnosis of even mild mental retardation, because she was able to function and travel within the community, function and learn in school, and obtain sufficient grades. Rather, she found Dashney to have a "borderline" IQ, and to be capable of performing simple, repetitive tasks.

In summary, I find substantial evidence to support the ALJ's determination that Dashney's full scale IQ score was inconsistent with her degree of functioning, and therefore, she did not meet or equal the criteria of Listed Impairment 12.05C. There isn't any merit to Dashney's contention that the ALJ had a duty to

13- OPINION AND ORDER

obtain further IQ testing, because the record adequately allowed for resolution of any ambiguity or inconsistency contained in the evidence.  See <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _15 day of March, 2007.

                                          /s/   Malcolm F. Marsh
                                         Malcolm F. Marsh
                                         United States District Judge

14- OPINION AND ORDER